Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile:    (310) 546-5301

*Attorneys for Putative John Doe in 2:13-cv-12201-DPH-DRG*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>JOHN DOE subscriber assigned IP address, 68.40.46.12<br><br>       Defendant. | Case No. 2:13-cv-12201-DPH-DRG<br><br>Assigned to: District Judge Denise Page Hood<br><br>Referred to: Magistrate Judge David R. Grand<br><br>**PUTATIVE JOHN DOE'S<br>MOTION TO QUASH** |

- 1 -

## MOTION TO QUASH

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE** that the Internet subscriber who plaintiff alleges is responsible for the I.P. address identified as 68.40.46.12 ("Movant") hereby moves the Court for an order quashing the subpoena directed to Movant's ISP Comcast, which seeks Movant's contact information.  This motion is made pursuant to Fed. R. Civ. Proc. 45(c)(3), and also pursuant to *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002), on the grounds that (i) the subpoena is not "very likely" or even "reasonably likely" to identify an actual defendant (as opposed to just the ISP subscriber), and, due to the nature of this case, the plaintiff should be required to explain the rest of the discovery plan in greater detail; and (ii) the subpoena should be quashed because the complaint cannot withstand a motion to dismiss for failure to state a claim upon which relief can be granted.

This motion is accompanied by a memorandum, a declaration of Morgan E. Pietz with exhibits, and a proposed order, for the Court's convenience.


Respectfully submitted,

DATED:     July 1, 2013


THE PIETZ LAW FIRM


*/s/ Morgan E. Pietz*


Morgan E. Pietz (Cal. Bar No. 260629)
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile:     (310) 546-5301

*Attorneys for Putative John Doe in 2:13-cv-12201-DPH-DRG*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

/s/ Morgan E. Pietz
Morgan E. Pietz


Respectfully submitted,

DATED:      July 1, 2013

Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile :    (310) 546-5301

*Attorneys for Putative John Doe in 2:13-cv-12201-DPH-DRG*

- 3 -

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,

             Plaintiff,

      v.

JOHN DOE subscriber assigned IP address,
68.40.46.12

           Defendant.

Case No. 2:13-cv-12201-DPH-DRG

Assigned to: District Judge Denise Page Hood

Referred to: Magistrate Judge David R. Grand

**MEMORANDUM IN SUPPORT
OF PUTATIVE JOHN DOE'S
MOTION TO QUASH**

## **TABLE OF CONTENTS**

MOTION TO QUASH ............................................................................................. 2

TABLE OF CONTENTS ....................................................................................... 5

TABLE OF AUTHORITIES.................................................................................. 6

I. INTRODUCTION AND SUMMARY ............................................................... 8

II. FACTUAL AND PROCEDURAL BACKGROUND...................................... 10

    (a)  Factual Background on Malibu Media's "Settlement" Business...................... 10

    (b)  Recent Developments: Single Doe Suits, "Expanded Surveillance Reports" and "Exculpatory Evidence Requests." .................................................................... 14

    (c)  Procedural History of Instant Action ................................................................ 15

III. THE COURT SHOULD QUASH THE ISP SUBPOENA ........................... 15

    (a)  Legal Standard ................................................................................................... 15

        (1)  The *Sony Music* and *Semitool* Factors ...................................................15

        (2)  *Gillespie* asks Whether the Subpoenas are "Very Likely" to Result in Service of Process ...................................................................................17

    (b)  The Nature of this Case and the First Amendment Mandate Higher Scrutiny of the Subpoena Before the Court ........................................................................... 17

    (c)  The Subpoenas, *By Themselves*, Are Not "Very Likely" or even "Reasonably Likely" to Result in the Identification of and Service Upon an Actual Defendant; Where is the Rest of the Discovery Plan?...................................... 19

    (d)  The Complaint Cannot Withstand a Hypothetical Motion to Dismiss ............. 21

IV. CONCLUSION ............................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*AF Holdings, LLC v. John Doe*, C.D. Cal. Case No. 2:12-cv-5712-ODW-(JCx) ECF No. 9,
10/19/12 ..................................................................................................................8, 19

*AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 ............. 9, 16, 19

*Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v.
Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004))............................................. 9, 14, 18

*Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455, Dkt. No. 40,
3/22/2011, p. 21 (Howell, J.) .................................................................................... 17

*Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)............................ 15

*Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012) .. 12

*Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, ECF No. 40, 8/24/12,
p. 3 ...................................................................................................................... 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1999)...................................... 10, 21

*Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011)
("*Hard Drive Prods.*") ..................................................................................... 9, 16, 19

*Hard Drive Productions, Inc. v. Does 1-90*, C11-03825 HRL, 2012 WL 1094653 (N.D. Cal. Mar.
30, 2012) ............................................................................................................... 9, 15

*In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. CV-11-3995-
DRH-GRB, Dkt. No. 39, 5/1/2012 ................................................................................. 8, 15

*Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28, 12/20/12 ..... passim

*Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35,
10/10/12 ("*Malibu Media II*") ................................................................... 9, 16, 19, 20

*Malibu Media v. John Does 1-10*, C.D. Cal. No. 12-cv-1642, ECF No. 32, 10/10/12 ............... 8, 20

*Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. April 11, 2012) .. 12

*Night of the Templar, LLC v. John Does 1-25,* N.D. Oh. No. 13-cv-396, ECF No. 5, 4/10/13, p. 6–
7 ......................................................................................................................... 10, 21

*Patrick Collins, Inc. v. John Does, et al.*, C.D. Cal. No. 12-cv-05267, ECF No. 21, 11/5/12, p. 5 16, 17

## I.  INTRODUCTION AND SUMMARY

The Internet subscriber who plaintiff alleges is responsible for the I.P. address identified as 68.40.46.12 ("Movant") hereby moves for an order quashing the subpoena plaintiff Malibu Media, LLC issued to Comcast, which seeks Movant's personal information.[1]

No doubt, a subpoena of the sort Movant now requests to quash is a *necessary* first step in identifying a defendant in a case like this.  But it is not a *sufficient* step.  And in cases like these, Movant believes that the plaintiff should be required to further explain *the rest of the discovery plan*, before being given the keys to the Court's subpoena power.  *See AF Holdings, LLC v. John Doe*, C.D. Cal. Case No. 2:12-cv-5712-ODW-(JCx) ECF No. 9, 10/19/12 (order vacating subpoenas in 45 *single-Doe* cases requiring plaintiff to explain before applying for new subpoenas "how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens."); *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28, 12/20/12 (same); *Malibu Media v. John Does 1-10*, C.D. Cal. No. 12-cv-1642, ECF No. 32, 10/10/12 (slip op.) (denying early discovery *even as to John Doe No. 1* after Malibu Media made two motions for early discovery where it failed to explain how it would move beyond the subpoena to identify the actual infringer). Malibu Media categorically refuses to meet and confer on this issue, and literally offers no hint at all as to what additional burdensome discovery the ISP subscriber (who is not currently a party) might expect, after first being identified via the ISP subpoena.

Requiring the plaintiff to make an additional showing is justified and should be required for several reasons.  First, the reality that Malibu Media is using federal lawsuits not so much to right a wrong, but rather as a for-profit enterprise designed to pressure ISP subscribers into

---

[1] Movant has reviewed the Magistrate Judge Grand's thoughtful order granting leave for plaintiff to conduct early discovery (ECF No. 6).  Movant notes that related issues are currently the subject of a pending objection to Judge Hood.  *See Malibu Media, LLC v. John Doe*, E.D. Mi. No. 12-cv-13312-DPH-MJH, ECF No. 63, 5/30/13.  Similarly, a motion to quash making identical arguments in a single-Doe case is currently pending before Judge Drain.  *See Malibu Media, LLC v. John Doe*, E.D. Mi. No. 13-cv-11432-GAD-RSW, ECF No. 6, 5/20/13.

"settlements," upon threat of being linked to a pornography lawsuits, still applies in a single-Doe case. *See, generally, In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. CV-11-3995-DRH-GRB, Dkt. No. 39, 5/1/2012; *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, ECF No. 7, 6/27/12, p. 6 ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model. ***The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial***.") Moreover, the discovery Malibu Media seeks is being made prior to the appearance of an adversarial defendant in this case and prior to a Rule 26(f) conference.  Accordingly, since early discovery is generally disfavored, the plaintiff's subpoena is held to a higher standard than if these subpoenas were being issued further to the course of usual litigation (where there is an adversarial defendant with an interest in checking potential abuse).

Moreover, the subpoena at issue here implicates First Amendment rights to anonymous speech, so more than just "good cause" is required, and plaintiff's request fails on at least two of the relevant "*Sony Music*" or "*Semitool*" factors.  *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980); *Hard Drive Productions, Inc. v. Does 1-90,* C11-03825 HRL, 2012 WL 1094653 (N.D. Cal. Mar. 30, 2012).

Specifically, the early discovery request here fails one of the relevant factors because the subpoena is not "very likely" or even "reasonably likely" to identify the actual infringing John Doe defendant.  As the plaintiff would admit, more discovery will *necessarily* be required and, given the circumstances of cases like this one, the plaintiff should be required to explain what that additional discovery will be before being given the keys to civil discovery in the first place.  *See Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to reveal the identities of the Doe defendants."); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 (denying requested early discovery because it was not "***very likely*** to enable Plaintiff to identify

the doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was '***not very likely***' to reveal the identity of the alleged infringer"); *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12 ("*Malibu Media II*") (denying early discovery, even as to John Doe No. 1, where it was not "very likely" to result in identification of defendant).

Finally, the early discovery request also fails on another of the relevant factors because the "snapshot" observations of infringement alleged in the complaint could not withstand a Rule 12(b)(6) motion to dismiss. *See Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 48, 2/7/13, pp. 4–5 (OSC re: Sanctions); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Night of the Templar, LLC v. John Does 1-25*, N.D. Oh. No. 13-cv-396, ECF No. 5, 4/10/13, p. 6–7 ( "this Court is unconvinced that Plaintiff has even pleaded a *prima facie* case of copyright infringement. Here, ***Plaintiff provided only an IP address snapshot***, and seeks to use that information alone to justify their motion for discovery." (emphasis added) (*citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1999) (copying of raw data does not satisfy the originality requirement necessary for a prima facie case of copyright infringement)).  Because the subpoena seeks to unmask anonymous speech, the Constitution requires that the Courts apply this kind of heightened scrutiny before allowing discovery like this to proceed. *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**(a)      Factual Background on Malibu Media's "Settlement" Business**

Plaintiff is a pornographer that has recently gotten into a new line of business: coercing copyright infringement "settlements." In these lawsuits, Plaintiff alleges that unknown individuals used certain I.P. addresses to access the Internet and used an application called BitTorrent to illegally download Plaintiff's pornographic movies. After filing a complaint seeking statutory damages, Plaintiff generally seeks leave of court to conduct early discovery and issue subpoenas to Internet Service Providers demanding that the ISPs disclose the account details of the I.P. addresses used to download plaintiff's movies.  In order to obtain Court authorization to issue

- 10 -

subpoenas—the single key legal issue driving Plaintiff's business model—Plaintiff avers that it needs to issue the subpoena in order to identify the defendant and effect service of process.

Plaintiff pretends it is interested in "identifying" and "serving" actual defendants.  The numbers tell a different story.  As has been shown district by district, in hundreds of cases, what plaintiff is really interested in is using this Court's subpoena power, and the stigma associated with pornography, to leverage improper "settlements" from Internet subscribers who may ***or may not*** have actually downloaded plaintiff's movies.  Generally, after it receives a list of names from the ISPs, Plaintiff turns these names over to its notorious, third-party "settlement negotiators" who begin calling ISP subscribers and pressuring them to settle.  Dec'l. of M. Pietz ¶¶ 7–12.

Then, typically, after requesting as many extensions as it can get of the Rule 4(m) service deadline—to allow its "settlement negotiators" time to work the phones for as long as possible—Plaintiff will simply dismiss the cases, or most if not all Does, without prejudice. Dec'l. of Morgan E. Pietz, ¶¶ 24, 27.  Once Malibu Media obtains subpoena returns identifying ISP subscribers, it has succeeded in getting all it really wanted in the first place: grist for the national "settlement" mill.  The pending Court action is no longer a priority. Plaintiff's usual *M.O.* is to dismiss most of the Does, but keep the case on life support (usually as against any Does who objected to the subpoenas, to discourage such insolence) for as long as possible, until the case is eventually dismissed without prejudice, either at Malibu Media's request, or for failure to serve or prosecute.  Every once and a while, Malibu Media does actually serve some people, to try and make a show of it, and maybe obtain a default. Dec'l. of Morgan E. Pietz, ¶ 27.  However, the aggregate numbers show the pattern clearly.  To confirm this pattern, this Court need look farther than its own docket; Malibu Media files cases, obtains discovery, and then dismisses most everyone (without prejudice, of course) at or near the Rule 4(m) deadline. [2]

One key problem with this 'copyright litigation as a business model' enterprise—which was not addressed in Plaintiff's moving papers seeking authorization to issue subpoenas—is that

---

[2] To look more carefully at exactly how Malibu Media's litigation in this district has unfolded, the Court is respectfully referred to E.D. Mi. No. 12-cv-13312, ECF No. 39 (Appendix collecting docket reports for Malibu Media cases in Eastern District of Michigan).

many of the subscribers whose information will be turned over by the ISPs are not actually the people who downloaded plaintiff's pornographic movies.  The unfortunate people sucked into this morass are, by definition, always the people who happen to pay the Internet/cable bill.  In an age when most homes have routers and wireless networks and multiple computers share a single I.P. address, the actual infringer could be a teenage son with a laptop, an invitee, a hacker, or any neighbor using an unencrypted (i.e., non-password protected) wireless signal. Thus, "there is a reasonable likelihood that the [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address."  *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. April 11, 2012).  Indeed, as one judge observed in another of these cases, "***Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material.***" *Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012).

This inconvenient fact, however, generally does not stop the plaintiff from demanding that an ISP subscriber (i.e., whomever happens to pay the bill) should fork over several thousand dollars to settle the case, upon threat of being publicly accused of illegally downloading explicit pornography. That threat is essentially the heart of this business: pay up, or else plaintiff will publicly shame you as someone accused of watching pornography.  Many subscribers, even if they are innocent, simply pay the ransom rather than face the expense, uncertainty and potential embarrassment of defending themselves.  Generally, in communicating with ISP subscribers, and sometimes in pleadings to the Court, the plaintiff simply ***assumes*** the ISP subscribers are the John Doe defendants and then threatens them accordingly.

Some plaintiff's lawyers in cases like this have taken a step in the right direction by admitting that actually naming and serving someone with a complaint in these cases, based on nothing more than the fact that they were identified by the ISP as the person who pays the bill, would likely violate Rule 11(b).  *E.g., Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, ECF No. 40, 8/24/12, p. 3 (Doe Mtn. to dismiss).  Recently, Judge Wright of the Central District of California focused on precisely this point and issued an order to show cause requiring a similar plaintiff to explain why it should not be sanctioned for naming and serving an

ISP subscriber as the defendant in a case like this without performing adequate factual investigation. *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 48, 2/7/13, pp. 2–7 (OSC re: Sanctions). Particularly when Malibu Media's notorious non-attorney, debt-collector-style "settlement negotiators" are calling up unrepresented ISP subscribers to pressure them to settle, one imagines that the nuanced topic of Rule 11 safeguards is unlikely to be a part of the scripted routine.

Far from acknowledging the Rule 11 issue here, in order to try and obtain early discovery as painlessly as possible,[3] plaintiff simply *conflated* the ISP subscribers who pay the Internet bills for their households with the actual defendants. The Court should carefully consider the following, from plaintiff's early discovery request in this case:

> "Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the ISPs and any related intermediary ISPs. Any such subpoena will demand the true name, address, telephone number, email address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address. Without this information, Plaintiff cannot serve the Defendants nor pursue this lawsuit to protect its valuable copyrights." P's Memo. i/s/o Early Discovery Request, ECF No. 3, p. 3.

To be sure, Malibu Media fully appreciates that the subpoena will not necessarily "demand the [contact information] of the ***Defendant*** to whom the ISP issued an IP address." What the subpoena ***will*** demand is the contact information for the ISP subscriber who pays the bill for an Internet account that was assigned an IP address at a certain date or time. However, typically, the IP address is assigned to an entire network; lots of people could have been the "Defendant" who was assigned the IP address in question. Plaintiff provided the ISP with the date and time that the IP address in question was supposedly logged by its IT "expert" downloading a movie. However,

---

[3] The early discovery motion, is, by definition, almost always unopposed, because there are no John Doe defendants yet aware of the case. The only exception would be instances where the Court appoints an attorney *ad litem* to represent the interest of the John Does, which some courts do, most notably in Texas.

even if plaintiff obtains a return on the subpoena, plaintiff will still have no idea *who* the actual John Doe defendant is who used this Internet access to conduct the allegedly infringing activity. Malibu Media has a suspect, in the form of the ISP subscriber who pays the bill, but that is all.

Further, while it is true that plaintiff cannot effect service *without* the subpoena, is notable that Malibu Media does not state anywhere that it actually *plans* to follow through with service in this case. Nor does Malibu Media argue that the subpoena would be *sufficient* to enable it to effect service. In reality, to name and serve someone in this case in a manner consistent with Rule 11(b), more factual investigation would be required beyond the subpoena; but there is no mention of any of that in Malibu Media's early discovery motion. In short, an IP address is not a person, but Malibu Media pretends that it is, in a calculated attempt to gloss over the holes in its case and obtain discovery by a motion it knows will be unopposed

In sum, although subpoenas like the ones at issue here *almost never* result in service of a complaint (Dec'l. of Morgan E. Pietz, ¶ 27) they almost always *almost always* results in the consummation of "settlements," many of which are paid by people who did not actually download plaintiff's movies, but do not wish to incur the expense, uncertainty and potential embarrassment of defending themselves.

**(b)      Recent Developments: Single Doe Suits, "Expanded Surveillance Reports" and "Exculpatory Evidence Requests."**

Starting around the beginning of 2013, Malibu Media essentially gave up on multi-Doe "swarm joinder" lawsuits,[4] and began suing John Doe defendants one at a time. Concurrently with that switch, Malibu Media has also begun including as exhibits to its complaints two somewhat unusual documents. The first document is something Malibu Media usually styles an "expanded surveillance report." This essentially consist of a record of various video titles that Malibu Media's purported technical expert alleges was downloaded by the same IP address observed downloading Malibu Media content. Generally, the content Malibu Media lists in the "expanded surveillance report" is considerably more graphic and embarrassing than the titles of Malibu Media movies. *See Malibu Media, LLC v. John Doe*, E.D. Wi. No. 3:13-cv-0205-slc, ECF No. 7 (order to

---

[4] The Eastern District of Michigan is one of the few jurisdictions where Malibu Media still has a multi-defendant case pending. *See* E.D. Mi. No. 12-cv-13312.

show cause why Malibu Media should not be sanctioned for including embarrassing, non-evidentiary material as attachment to complaint). Malibu Media also includes as an attachment to its complaints, an so-called "exculpatory evidence request." Presumably, Malibu Media hopes that pro se defendants will complete this form when they prepare an answer, and thus provide Malibu Media with incriminating information outside the confines of the Rules of Civil Procedure.

**(c)      Procedural History of Instant Action**

Here, plaintiff filed its complaint a complaint on May 17, 2013. (ECF No. 1). That same day, plaintiff filed a motion for leave to serve third party subpoena. (ECF No. 2, 3). On June 5, 2013, Magistrate Judge Grand granted plaintiff's request for early discovery. ECF No. 6. Movant now objects to the subpoena.

### III.  THE COURT SHOULD QUASH THE ISP SUBPOENA

**(a)      Legal Standard**

(1)      The *Sony Music* and *Semitool* Factors

When it comes to evaluating the propriety of ISP subpoenas that seek to unmask the identities of John Doe defendants in file sharing cases, courts on the Second Circuit typically use the *Sony Music* test, which requires courts to weigh:

> "(1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)).

Courts often refer to these four factors as the *Sony Music* factors. As the *In re: Adult Films Cases* court noted, this test is not only relevant in evaluating motions to quash, but also frames the inquiry as to whether early discovery should have been granted in the first place. *In re: BitTorrent*

*Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012)
Case No. CV-11-3995-DRH-GRB, ECF No. 39 at p. 11.

Courts on the Ninth Circuit typically apply a similar set of factors, the so-called *Semitool* or
*seescandy* factors.  As one Court explained in a case filed by the same group of lawyers behind
this case, when evaluating a subpoena in a case like this,

> "Good cause may be found where the need for expedited discovery,
> in consideration of the administration of justice, outweighs the
> prejudice to the responding party. *Semitool, Inc. v. Tokyo Electron
> Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). In determining
> whether there is good cause to allow expedited discovery to identify
> anonymous internet users named as Doe Defendants, courts consider
> whether: (1) the plaintiff can identify the missing party with
> sufficient specificity such that the Court can determine that
> defendant is a real person or entity who could be sued in federal
> court; (2) the plaintiff has identified all previous steps taken to locate
> the elusive defendant; (3) the plaintiff's suit against defendant could
> withstand a motion to dismiss; and (4) the plaintiff has demonstrated
> that there is a reasonable likelihood of being able to identify the
> defendant through discovery such that service of process would be
> possible. *See, e.g., Hard Drive Productions, Inc. v. Does 1-90*, C11-
> 03825 HRL, 2012 WL 1094653 (N.D. Cal. Mar. 30, 2012); *see also
> Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D.
> Cal. 1999) (applying same standard)." *Patrick Collins, Inc. v. John
> Does, et al.*, C.D. Cal. No. 12-cv-05267, ECF No. 21, 11/5/12, p. 5
> (slip op.).

The *Sony Music* and *Semitool* factors largely track with one another, although, if anything,
the *Semitool* factors are perhaps a little more specific.  For example, *Semitool* requires that a
plaintiff's complaint be able to withstand a motion to dismiss, whereas *Sony Music* talks about the

"concreteness" of plaintiff's *prima facie* claim.  Similarly, whereas *Semitool* requires that the plaintiff demonstrate "that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible," *Sony Music* talks instead of a showing that the discovery will "advance the claim."

     (2)    <u>*Gillespie* asks Whether the Subpoenas are "Very Likely" to Result in Service of Process</u>

With respect to the question of whether the subpoenas will result in service of process, or "advance the claim," many courts actually go even farther than *Semitool* or *Sony Music*, and follow a Ninth Circuit case which asks whether the subpoenas are "very likely" to result in the service of process. *Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980).  Many courts have cited *Gillespie* for the proposition that subpoenas in cases like this should be quashed because they are not "very likely" to reveal the identities of the actual defendants. *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to reveal the identities of the Doe defendants."); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 (denying requested early discovery because it was not "***very likely*** to enable Plaintiff to identify the doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was '***not very likely***' to reveal the identity of the alleged infringer"); *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12 ("*Malibu Media II*") (denying early discovery, even as to John Doe No. 1, where it was not "very likely" to result in identification of defendant).

**(b)    The Nature of this Case and the First Amendment Mandate Higher Scrutiny of the Subpoena Before the Court**

The issue before the Court on whether to quash the subpoenas is not one purely limited to the terms of Rule 45.  This is true for three reasons.  First, the potential for abuse in this kind of litigation has already been noted above, and has been noted by many courts, including in orders directed specifically at Malibu Media.  Second, the defendant was unaware of this action when early discovery was granted, and was therefore unable to challenge the issuance of early discovery

prior to a Rule 26(f) conference.  Generally, there is a higher bar for early discovery than for subpoenas issued in the normal course of litigation where adverse parties have already appeared on both sides of the 'v'.  *See Patrick Collins, Inc. v. John Does, et al.*, C.D. Cal. No. 12-cv-05267, ECF No. 21, 11/5/12, p. 5 (slip op.).

Third, and perhaps most importantly, although it is not necessarily immediately obvious, the subpoenas at issue here implicate limited First Amendment rights in anonymous speech, so heightened scrutiny should be applied. *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) (surveying case law and concluding "that the use of P2P file copying networks to download, distribute, or make sound recordings available qualifies as speech entitled to First Amendment protection."); *Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455, Dkt. No. 40, 3/22/2011, p. 21 (Howell, J.) ("file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants anonymity by compelling production of the defendants' identifying information.")

Movant concedes that many courts rightly conclude that file sharing is not really pure speech, and thus afforded only very limited First Amendment protection, and that such a limited right must often give way to a copyright infringement plaintiff's need for civil discovery. However, the upshot of the First Amendment issue is that is that this Court must apply the heightened First Amendment scrutiny in analyzing the subpoenas, which includes considering whether the complaint could withstand a hypothetical motion to dismiss. *See Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

Further, Comcast Cable Communications, the ISP here, is a cable provider, so, Comcast is bound by the Cable Service Privacy Act to protect its subscriber's privacy.  *See* 47 U.S.C. §551. That statute further supports Movant's contention that there is a reasonable expectation of privacy in ISP subscriber information.

Here, the kind of "speech" at issue is only partially communicative, so the activity is afforded only minimal First Amendment protection.  The plaintiff should absolutely be allowed to

try again, by explaining the complete discovery plan in more detail.  But the bottom line is that the First Amendment requires *higher scrutiny* of the subpoena at issue here; mere good cause is not the standard; *Sony Music* (which was cited with approval by the Second Circuit in *Arista Records*) and *Semitool* (which is routinely applied by district courts in the Ninth Circuit) instruct courts to examine the discovery request more carefully, including by probing the strength of the complaint, asking whether it could withstand a motion to dismiss, and applying the other *Sony Music* and *Semitool* factors.

**(c)     The Subpoenas, *By Themselves*, Are Not "Very Likely" or even "Reasonably Likely" to Result in the Identification of and Service Upon an Actual Defendant; Where is the Rest of the Discovery Plan?**

In essence, the problem in a case like this is that although the subpoena is a *necessary* first step in identifying an actual infringer, the subpoena alone is not a *sufficient* means to achieve that end.  And plaintiff presents no discovery plan as to how it will take a subpoena return listing *ISP subscribers* who pay the Internet bill for their households, and then use that information to identify actual *John Doe defendants* who will then be served.  What plaintiff's past experience strongly suggests is that it does not really care to identify actual defendants; rather, plaintiff simply wants to leverage "settlements" from as many ISP subscribers as possible, upon threat of publicly "naming" them in a lawsuit alleging that they downloaded pornography, regardless of whether they committed the alleged infringement or not.  Plaintiff *may* be able to propose a reasonable, good faith discovery plan that would make the subpoenas *more likely* to result in identification of actual defendants, but it has not done so here.

Recently, Judge Wright of the Central District of California picked up on precisely this issue in a similar case filed by a different pornographic mass infringement plaintiff.  After all the single-defendant AF Holdings, LLC cases in the Central District of California were transferred to Judge Wright, Judge Wright issued an order in each case vacating the prior orders authorizing early discovery and ordering the plaintiff to show cause why early discovery is warranted.  *See, e.g., AF Holdings, LLC v. John Doe*, C.D. Cal. Case No. 2:12-cv-5712-ODW-(JCx) ECF No. 9, 10/19/12.  Specifically, Judge Wright ordered AF Holdings to demonstrate,

"how it would proceed to uncover the identity of the actual infringer
once it has obtained subscriber information—given that the actual
infringer may be a person entirely unrelated to the subscriber—while
also considering how to minimize harassment and embarrassment of
innocent citizens. Failure to timely comply with this order will also
result in the dismissal of this case." *Id.; see also Ingenuity 13, LLC
v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28,
12/20/12 (same).

Similarly, many courts have quashed subpoenas because they have found that the
subpoenas, by themselves, were not "very likely" or even "reasonably likely" to result in
identification of defendants and service of process. *Hard Drive Productions, Inc. v. Does 1-188*,
809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early
discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to
reveal the identities of the Doe defendants."); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D.
Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 (denying requested early discovery because it
was not "***very likely*** to enable Plaintiff to identify the doe defendants."); *AF Holdings, LLC v. John
Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the
requested discovery was '***not very likely***' to reveal the identity of the alleged infringer"); *Malibu
Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12
("*Malibu Media II*") (denying early discovery, even as to John Doe No. 1, where it was not "very
likely" to result in identification of defendant).

Judge Klausner's order out of the Central District of California is particularly significant in
that it denies early discovery *even as to John Doe No. 1*, because Malibu Media could not
demonstrate good cause for early discovery, despite having two bites at the apple.[5]  *Malibu Media*

---

[5] After all of the Malibu Media cases were transferred to Judge Klausner on July 10, 2012, the
Court issued an order vacating all prior orders authorizing early discovery. *Malibu Media v. John
Does 1-10,* No. 2:12-cv-1642-RGK (C.D. Cal.  July 10, 2012). Malibu Media subsequently filed a
renewed motion for leave to take early discovery, which was denied as to *all Does*, *with* prejudice.
*Malibu Media II, supra*.

*v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12 ("*Malibu Media II*"). Judge Klausner held that *Gillespie v. Civiletti*, 629 F. 2d 637, 642 (9th Cir. 1980) controls, and that the requested discovery should be denied because it was not "very likely" to reveal the identities of the Doe defendants. *Malibu Media II, supra*, p. 4. The problem, rightly noted by Judge Klausner, is that "obtaining the subscriber information [by issuing subpoenas to the ISPs] will only lead to the person paying for the Internet service and not necessarily the actual infringer." *Id.* After reviewing all of the reasons why "the subscriber information is not a reliable indicator of the actual infringer's identity," including the possibility the subscriber has an unsecured WiFi network, as well as the prejudicial effect on innocent subscribers, Judge Klausner further held that "it is ***not even reasonably likely*** that early discovery will lead to Defendants identities and service of process." *Id.* (emphasis added). In short, Malibu Media's practice, repeated here, of selectively *assuming* that an ISP subscriber who pays the Internet bill is necessarily the actual Doe defendant has thus explicitly been held insufficient.

Further, the Court should review its own docket and observe firsthand Malibu Media's record of service of process. When authorized to issue subpoenas, only a paltry number of cases ever proceed through to service of process. Malibu Media has attempted to subpoena information for over 6,000 John Doe defendants, of whom it has served, what, perhaps 100? Do these numbers really add up to even a "reasonable likelihood" that the subpoenas will result in service of process?

In short, before being given the keys to discovery, a plaintiff in this kind of case should be required to explain what it will do with the subpoena information, if allowed to obtain it. *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28, 12-20-12; *Malibu Media II, supra*. Perhaps Malibu Media can devise a discovery plan making it more likely that the subpoena will result in service of process on an actual defendant, but it should, at the very least, be sent back to the drawing board to propose such a plan.

**(d)** **The Complaint Cannot Withstand a Hypothetical Motion to Dismiss**

The complaint cannot withstand a motion to dismiss for failure to state a claim on which relief can be based, because the complaint employs the so-called "snapshot" theory of infringement. *See Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 48,

2/7/13, pp. 4–5 (OSC re: sanctions); *cf AF Holdings, LLC v. Rogers*, S.D. Cal. No. 12-cv-1519, ECF No. 14, 1/29/13 (granting motion to dismiss in part by ordering plaintiff to make a more definite statement of its IP address allegations).

In *Feist,* the U.S. Supreme Court explained that "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. . . . Certainly, the **raw data does not satisfy the originality requirement**.") (emphasis added).  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1999).

Recently, Judge Gwin cited this very passage from *Feist* in support of the court's conclusion in a BitTorrent case that "this Court is unconvinced that Plaintiff has even pleaded a *prima facie* case of copyright infringement. [*fn 35; citing id.*] Here, **Plaintiff provided only an IP address snapshot**, and seeks to use that information alone to justify their motion for discovery. . . . the mere indication of participation weakly supports Plaintiff's conclusions." *Night of the Templar, LLC v. John Does 1-25,* N.D. Oh. No. 13-cv-396, ECF No. 5, 4/10/13, p. 6–7 (emphasis added).

Essentially, at most, plaintiff's complaint alleges that the John Doe defendants were observed downloading tiny "pieces" of a BitTorrent file, which consist of raw, un-viewable data. The complaint does **not** contain an allegation that the defendants actually assembled a complete set of "pieces" together into a usable version of the work, which was then copied or distributed.  As Judge Wright has explained, a mere snapshot observation of possible infringing activity does not necessarily equal actionable copyright infringement.  In fact, Judge Wright believes that filing and serving a complaint based on such weak evidence may be sanctionable, under Rule 11(b). *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 48, 2/7/13, pp. 4–5 (OSC re: Sanctions).

 If the Court is interested in this issue, Movant would be pleased to brief it further.  At a minimum, plaintiff should be required to make a more definite statement of its claims, which clarifies whether *an entire usable file* was downloaded by the John Doe, or if the plaintiff merely observed a "snapshot" of raw data being transferred.

//

## IV.  CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court quash the subpoena plaintiff issued to Movant's ISP which seeks Movant's contact information.


Respectfully submitted,

DATED:      July 1, 2013


**THE PIETZ LAW FIRM**


_/s/ Morgan E. Pietz_


Morgan E. Pietz (Cal. Bar No. 260629)
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile:    (310) 546-5301

_Attorneys for Putative John Doe in 2:13-cv-12201-DPH-DRG_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

<u>/s/ Morgan E. Pietz</u>
Morgan E. Pietz


Respectfully submitted,

DATED:      July 1, 2013

Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile :   (310) 546-5301

*Attorneys for Putative John Doe in 2:13-cv-12201-DPH-DRG*

Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile :    (310) 546-5301

*Attorneys for Putative John Doe in 2:13-cv-12201-DPH-DRG*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>JOHN DOE subscriber assigned IP address, 68.40.46.12<br><br>           Defendant. | Case No. 2:13-cv-12201-DPH-DRG<br><br>Assigned to: District Judge Denise Page Hood<br><br>Referred to: Magistrate Judge David R. Grand<br><br>**[PROPOSED] ORDER GRANTING PUTATIVE JOHN DOE'S MOTION TO QUASH** |

On July 30, 2013, the Internet subscriber who plaintiff alleges is responsible for the I.P. address identified as 68.40.46.12 ("Movant")  moved the court for an order quashing the subpoena directed to Movant's ISP Comcast, which seeks Movant's contact information.

The motion was made pursuant to Fed. R. Civ. Proc. 45(c)(3), and also pursuant to *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002), on the grounds that (i) the subpoena is not "very likely" or even "reasonably likely" to identify an actual defendant (as opposed to just the ISP subscriber), and, due to the nature of this case, the plaintiff should be required to explain the rest of the discovery plan in greater detail; and (ii) the subpoena should be quashed because the complaint cannot withstand a motion to dismiss for failure to state a claim upon which relief can be granted.

The Court, having duly considered the motion, hereby **GRANTS** the motion, as follows:

- 25 -

**ORDERED**, that plaintiff's subpoena to Movant's ISP seeking Movant's contact information is hereby **QUASHED**;

**ORDERED**, that plaintiff shall serve a copy of this order on Movant's ISP within 24 hours of the date of the issuance of this order;

**ORDERED**, that plaintiff may re-apply for leave to issue a new subpoena to identify Movant after first explaining to the Court in a noticed motion how the plaintiff "would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens." *AF Holdings, LLC v. John Doe*, C.D. Cal. Case No. 2:12-cv-5712-ODW-(JCx) ECF No. 9, 10/19/12;

**SO ORDERED.**

DATED: _____          _____

United States District / Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

/s/ Morgan E. Pietz
Morgan E. Pietz


Respectfully submitted,

DATED:      July 1, 2013

Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile :    (310) 546-5301

*Attorneys for Putative John Doe in 2:13-cv-12201-DPH-DRG*

- 27 -