Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

*Attorneys for Putative John Doe*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>JOHN DOE subscriber assigned IP address, 68.40.46.12<br><br>            Defendant. | Case No. 2:13-cv-12201-DPH-DRG<br><br>Assigned to: District Judge Denise Page Hood<br><br>Referred to: Magistrate Judge David R. Grand<br><br>**REPLY IN SUPPORT OF PUTATIVE JOHN DOE'S MOTION TO QUASH** |

     With respect to the instant subpoena, plaintiff Malibu Media, LLC ("Malibu") objects to the "additional" procedures it thinks are "unnecessary," which were suggested in the motion to quash (ECF No. 7) filed by the Internet user being targeted by Malibu as the putative John Doe defendant ("Movant"). ECF No. 9 p at 1.  Malibu thinks it unfair that it should be singled out for heightened scrutiny as a "troll" or pornographer, and argues that granting the instant motion to quash would "catastrophically undermine the rights of copyright owners by denying them the tools necessary to identify on-line infringers." *Id.* at 2.

     Moving beyond the hyperbole—would having to propose a more detailed discovery plan at the ISP subpoena stage really be a 'catastrophe' for copyright owners?—there are actually several good reasons why the Court ***should*** apply heightened scrutiny to the instant subpoena.

     First, the law routinely applied by most district courts in these kinds of cases makes clear that good cause is not the applicable standard for evaluating a subpoena in a John Doe file sharing

case; rather, courts in most districts typically apply the so-called *Sony Music*[1] or *Semitool*[2] factors. These cases and their corresponding standards were analyzed at length in Movant's initial brief (ECF No. 7 at 15-17), but Malibu's opposition ignores them entirely (*see* ECF No 9). Malibu apparently has no reply to Movant's argument that the subpoena, by itself, is not "reasonably likely" (or, per *Gillespie,*[3] "very likely") to result in identification and service on the actual John Doe defendant. Malibu could have mooted a main thrust of Movant's argument by simply outlining the rest of its discovery plan. Will Movant be deposed? Will Malibu demand production of his computer(s)? Who will pay? At this point Movant is a non-party, so just how much **more** discovery will there be, beyond the subpoena? Instead, Malibu dodges those questions entirely, ignores Movant's key cases entirely, and simply protests that it does not see any reason why it should be held to any standard higher than "good cause." That Malibu consistently refuses to explain to courts how it plans to use ISP subpoena returns to identify actual defendants is suspicious; it suggests that Malibu is more interested in leveraging settlements, en masse, from Internet account holders who may be innocent, than in identifying proper John Doe defendants.

Second, although definitive numbers are hard to come by, it seems likely that Malibu Media is currently suing more people in federal court than any other litigant in the United States[4]; indeed, Malibu may hold the overall record, in all of history, for initiating the most federal lawsuits. No other modern copyright litigant is even close. The Court has inherent authority to manage its docket and is well within its discretion to fashion procedural remedies designed to protect the efficient administration of justice. *Cf. Malibu Media, LLC v. John Does 1-28,* M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12, pp. 11-13 (Whittemore, J.) (noting the extreme

---

[1] *See Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) *citing Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004).
[2] *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).
[3] *Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980); *see also* ECF No. 7 at 16-17.
[4] Per a nationwide PACER search conducted July 16, 2013, "Malibu Media" appears in 957 federal lawsuits. Malibu has reached that total in less than 18 months (Malibu began filing cases in February of 2012). Malibu filed 24 new cases in this district in May of 2013 alone. Undersigned counsel's best estimate would be that this national case total corresponds to approximately 6,000 John Doe defendants, since Malibu Media started out filing swarm-joinder, multiple defendant cases but now mainly sues people one at a time.

impact Malibu Media cases have had on the court's docket and finding that this factor militated in favor of severance of multiple-defendant cases). In view of Malibu's nearly unprecedented recourse to the federal court system, it is not at all unreasonable or unfair to apply the relevant procedural requirements with stricter scrutiny than might befit a litigant who does not have nearly 1,000 lawsuits pending nationwide. Malibu's entire litigation strategy is a numbers game, and this case (one of the relative few where an Internet account holder has retained counsel to assert his rights) should not be decided in a vacuum.

Third, the fact that Malibu Media is a pornographer is significant, but there are other abusive aspects to these suits, beside the threat of public shaming as a sexual deviant. The *Sony Music* and *Semitool* analysis applies with equal force to makers of mainstream box office flops who are now attempting to monetize those economic misadventures through the miracle of industrial-scale BitTorrent litigation. Even if the content at issue is not pornography, given the potentially high range of statutory damages under the Copyright Act, plus the cost of defending oneself, substantial pressure still exists for nuisance value settlements in this kind of litigation. The crux of the problem, as explained by Magistrate Judge Smith of the Southern District of Georgia is that "it costs money to hire counsel, so it is easy to extract nuisance-level settlements from demand-lettered defendants *without ever* naming them, and without any of them ever appearing here to defend against unjust joinder or worse." *Voltage Pictures, LLC v. Does 1-31,* S.D. Ga. Case No. 4:13-cv-0037, ECF No. 7, 4/1/13. While Judge Smith was considering joinder in that order, in a non-pornography case, the same concerns remain, whether in one big multi-defendant case, or in hundreds of individual cases, and whether the content at issue is pornography or children's videos.

Movant is not asking that the courthouse door be slammed in Malibu's face because it is a pornographer. Indeed, quite to the contrary, the instant motion calls for quashing the subpoena without prejudice to Malibu reapplying for leave to reissue a subpoena, provided that Malibu first explains how the new subpoena will fit into a plan for pre-service discovery. Or, as Judge Wright put it, when applying for leave to issue an ISP subpoena prior to a Rule 26(f) conference, (that is,

to borrow the Court's imprimatur outside of the ordinary course of adversarial litigation) a litigant like Malibu should be required to first explain to the Court,

> "how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens." *AF Holdings, LLC v. John Doe,* C.D. Cal. Case No. 2:12-cv-5712-ODW-(JCx) ECF No. 9, 10/19/12; *see also Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28, 12/20/12 (same).

Requiring that such a showing be made at the early discovery stage is equally good policy for all copyright litigants seeking to unmask anonymous file sharers engaged in a form of expressive speech protected (albeit minimally) by the First Amendment, whether the content is at issue pornography or not.

To reiterate a key point from the instant motion, Movant concedes that the ISP subpoena is a *necessary* first step in the process of identifying an appropriate defendant; but Malibu apparently concedes that the subpoena is not, by itself, a *sufficient* means to accomplish that end. Malibu also apparently does not dispute the point that, in view of the prevalence of wireless networks which allow multiple users to share a single IP address, naming and serving someone as a defendant based solely on the fact that they pay the Internet bill would likely violate Rule 11(b).

In moving for early discovery, Malibu bore the burden of meeting the relevant test, as articulated in *Sony Music* and *Semitool*. The same test applies when considering the instant motion to quash. *See In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, ECF No. 39 at p. 11). Since neither Movant nor any defendant had an opportunity to dispute Malibu's motion for early discovery, the burden on justifying the early discovery should remain with Malibu. In balancing the competing interests, the fact that the subpoena alone, without more, is not reasonably likely to

result in identification and service on an actual defendant should tip the balance in favor of the Internet users being targeted in these suits.

In view of Malibu's recent experience in the bellwether trial before Judge Baylson in the Eastern District of Pennsylvania, what is the problem with letting this Court, and the Movant, in on the plan for pre-service discovery? Presumably, Malibu has developed such a plan in Pennsylvania, so why not share it? The problem is that doing these cases in fully above-board fashion is simply not as profitable for the plaintiff's law firms driving them on a contingent fee basis. The grist for the national settlement mill, which is the profit center of the enterprise, consists solely of subpoena return information. Any further litigation beyond that is an unnecessary cost that only hurts the bottom line for Malibu, its lawyers, and its telephone debt collectors. So one can understand why Malibu is reluctant to represent to the Court that it plans to do X, Y, and Z in terms of additional discovery, to ensure that it appropriately targets actual infringers. Malibu does not really want to do X, Y, and Z, and, for most of the people it sues, it never will; what Malibu wants to do is pressure Internet users, en masse, to pay the tab for infringement that they may or may not have committed. To be sure, Malibu will pick a few people to try and make an example out of, and, indeed, Judge Baylson essentially forced Malibu to take the bellwether cases to trial, explaining that if Malibu dismissed them, he would draw adverse inferences about the merits of these actions. Again, for Malibu, it's a numbers game, and this motion should be viewed with that reality as a backdrop.

It was Malibu's burden to explain how the subpoena will be reasonably likely to result in identification and service on an actual defendant, and Malibu failed to meet that burden. If Malibu can make a showing, to the Court's satisfaction, of an appropriately tailored pre-service discovery plan, then Movant will save Malibu the trouble of issuing a second subpoena and simply identify himself to Malibu (subject to a future request to proceed anonymously).

Admittedly, Malibu has cleaned up its act somewhat in 2013, compared to its litigation tactics in 2012. Some of the more overt, boiler-room style threats made by telephone debt collectors appear to have been reigned in and replaced with more implicit kinds of pressure. The Malibu suits are being filed against one defendant at a time now, instead of suing defendants by

the dozen (or even by the thousand, as was common for other plaintiffs in 2010 and 2011). And Malibu now purports to not oppose motions to proceed anonymously. It even took a case to trial. These are all steps in the right direction. But these concessions were not made willingly, they have been pried out of Malibu by litigants like Movant, i.e., Internet users who are willing to hire a lawyer to assert their rights. This motion is not a measure in obstructionism or a ploy to delay inevitable liability. Rather, it is an important attempt to curb the potentially abusive aspects of this kind of litigation, not just for Movant, but for all similarly situated persons caught up in Malibu's web—and there are thousands of such people, including dozens in this district.

As for the issue of whether Malibu's complaint could withstand a hypothetical motion to quash, while it may be true that essentially identical, cookie-cutter copies of Malibu's complaints have been challenged in various jurisdictions, undersigned counsel is not aware of a motion yet having tested the "snapshot" infringement issue. At a minimum, Malibu should be required to make a more complete allegation as to whether the defendant did or did not obtain a complete, usable copy of a video file, as opposed to just a small, unassembled piece of ones and zeroes.

For the foregoing reasons, Movant respectfully requests this court to follow Judge Wright's lead on this issue, grant the instant motion, and require BitTorrent plaintiffs like Malibu to explain the plan for pre-service discovery more fully before being given the keys to the Court's subpoena power.

Respectfully submitted,

DATED: July 22, 2013,


**THE PIETZ LAW FIRM**

*/s/ Morgan E. Pietz*

Morgan E. Pietz (Cal. Bar No. 260629)
Attorneys for Putative John Doe

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

/s/ Morgan E. Pietz
Morgan E. Pietz


Respectfully submitted,

DATED:     July 22, 2013